## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**In Re:**

**CASEY MARIE ANTHONY,**   Case No. 8:13-bk-00922-KRM
      Debtor.   Chapter 7
_____/

**ROY KRONK,**
      Plaintiff,   **Adversary Proceeding**

v.   Case No. 8:13-ap-00629-KRM

**CASEY MARIE ANTHONY,**
      Defendant.
_____/

### AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS

Plaintiff and creditor, ROY KRONK ("Kronk" and/or "Plaintiff"), hereby files his Complaint against CASEY MARIE ANTHONY ("Casey Anthony" and/or "Defendant"), to determine the dischargeability of certain of Defendant's debts to Plaintiff pursuant to 11 U.S.C. § 523(a)(6). In support thereof, Plaintiff states as follows:

### JURISDICTION AND VENUE

1.    On January 25, 2013 (the "Petition Date"), the Defendant filed a voluntary petition in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division, seeking relief pursuant to Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2.    Stephen Meininger has been appointed as the Trustee over the case pursuant to 11 U.S.C. § 701.

3. Plaintiff is a creditor of the Defendant, and therefore has standing to file this action.

4. Defendant is a Florida resident who previously resided in Orange County, Florida, although her current residence is unknown to the Plaintiff.

5. This Complaint commences an adversary proceeding pursuant to Fed. R. Bankr. P. 7001 *et seq.*

6. Jurisdiction over this matter and over the Defendant is proper in this district, pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 523.

7. Venue over this matter is proper in this district, pursuant to 28 U.S.C. § 1409.

8. This adversary proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and 28 U.S.C. § 157(b)(2).

## FACTUAL BACKGROUND

9. Plaintiff, at all material times, was employed and working in Orange County, Florida, as a meter reader for Orange County.  At all relevant times, Plaintiff was acting as a Good Samaritan, by doing the right thing and reporting what he found to the proper authorities. What Plaintiff found turned out to be the remains of Caylee Anthony.

10. Under the facts herein, Plaintiff is a private figure.

11. Casey Anthony was the mother of Caylee Anthony.  Casey Anthony was charged with her daughter's murder, was tried and acquitted of that charge.  In that same proceeding, Casey Anthony was convicted of lying and providing false information to law enforcement officers.  *State v. Anthony*, Orange County, Florida, Case No. 2008-CF-015606-A-O (the proceeding hereinafter referred to as the "Criminal Trial").

12. The criminal investigation into the disappearance of Caylee Anthony and Casey Anthony's subsequent Criminal Trial was well-publicized. During that time, Casey Anthony, through her attorneys, who acted as her agents, published false and defamatory statements about Kronk. The false and defamatory statements about Kronk were made out of court and the publications occurred in the public arena, in almost every media format imaginable and were broadcast and/or published across the country, if not the globe, via the Internet, the news print media, and national television shows. The specific defamatory statements are as follows:

    a. On or about November 18, 2009, Defendant's attorney, a person with actual knowledge of all events involved in the Criminal Trial who was acting as her agent, Jose Baez ("Baez") spoke in an out-of-court interview wherein he stated " . . . we are not playing around and we are going to get to the bottom of things . . . it is very odd [about Kronk finding the skull]" alluding to a sinister nature relating to Kronk's Good Samaritan deed of finally locating the body of young Caylee Anthony.

    b. On or about November 20, 2009, Defendant's attorney Baez and co-counsel, a person with actual knowledge of all events involved in the Criminal Trial who was acting as Defendant's agent, Andrea Lyon ("Lyon") appeared on NBC's *Today Show* and gave an interview with Matt Lauer. Lyons' critical statements to the television audience attempt to implicate Kronk as a suspect and include:

        i. "There is as much circumstantial evidence implicating Roy Kronk, as there is implicating our client. And that the state and the police should have investigated him as a suspect; there were so many red flags, it was a sea of red";

        ii. "He's the only one who's been with the body. He's the only one who magically discovers it." (Lyon uses a hand gesture quoting "magically").

    iii. "He takes a day off the day before he discovers it [the body] again in December."

At no time during the interview did Baez in any way interject to correct the audacious statements being made against Kronk by Lyon and in fact he too agreed with all statements being made.

c. On or about November 20, 2009, another member of Defendant's criminal defense team, also a person with actual knowledge of all events involved in the Criminal Trial who was acting as her agent, Ms. Linda Kenney Baden ("Kenney Baden"), appeared on *The Early Show*. During the interview, Kenney Baden did not simply allude to mysterious public allegations against Kronk but explicitly stated in her interview that Kronk should be a suspect. Kenney Baden's statements include:

Q. Do you believe that there is just as much evidence incriminating Roy Kronk as there is against Casey?
A. Absolutely.

Q. It really doesn't make sense that he'd [Kronk] be the one because he repeatedly tried to alert authorities when he says he saw the body, he tried to call it in several times. Why would he do that if he was the killer?
A. You know, it is easy to snatch a kid away.

d. On or about November 20, 2009, in a continuation of her public accusations and further alluding to Kronk in an insinuating derogatory manner, Kennedy Baden gave another interview which was publicly televised on *TruTV*, in which her comments included contentions of "suspicious circumstances" in "a grand coincidence of [Kronk] finding the body".

e. On or about December 7, 2009, it was widely reported in national publications that Casey Anthony through her attorneys Baez, Kenny Baden and Lyon stated:

1. Meter reader killed Caylee;

2. Kronk has a list of prior crimes;

3. Kronk was involved with inappropriate behavior with young girls;

4. Kronk was involved with holding women against their will;

5. Kronk used duct tape against a woman to hold her against her will;

6. Casey Anthony knows that Kronk killed Caylee;

7. Kronk has a history of abusing women; and

8. Kronk lives in a world of fantasy and violence.

f. On or about December 23 or 24, 2010, Baez stated and republished to WKMG Channel 6 news that the defense team is not backing off the above statements and from their position that Kronk was the killer. He further stated and republished to WKMG Channel 6 news that the defense would not be backing off from any statements made in its "Motion in Limine to Introduce Prior Bad Acts and Other Circumstantial Evidence Pertaining to Roy M. Kronk". Baez said that any claim that the defense team was backing off [from Kronk] is 100% false. Such public statements by Baez as Defendant's attorney and agent, to the general public publishes and renews the above previous out-of-court statements made by the defense team in televised interviews with news stations.

g. On or about June 11, 2011, Lyon appeared on *20/20* for an interview in which she stated that Kronk "… took a day off an then just decided to wander into this area that had been searched and searched and searched .. and he finds the body … that's very suspicious". Lyon also commented that "the physical state of the remains are questionable because it appears that the remains were removed"

alluding that Kronk was somehow involved and further publicly reiterating Baez's opening statement charges that "Mr. Kronk is a morally bankrupt individual who actually took Caylee's body and hid her."

### **DEFENDANT'S MISCONDUCT**

13. Casey Anthony's defense in her Criminal Trial was that Caylee Anthony drowned in the family swimming pool on June 16, 2008. If her story is true, then she knew that she had authorized, adopted, and permitted her agents to publish false statements (as set forth in Paragraph 12 above, hereinafter referred to as the "Statements") about Kronk, and those statements were made willfully, maliciously, and with the intent of deceiving the public.

14. It was always clear to the defense team that their publicly disseminated Statements about Kronk were false. This is further confirmed by the post-verdict remarks by Baez on or about July 5, 2011, when he tells Geraldo Rivera that "this was a[n] . . . accident that snowballed out of control, and you know, it doesn't get any more clearer than that."

15. In an attempt to find someone other than herself to blame for the tragic death of her child, Casey Anthony authorized and permitted her attorneys, as her agents, to make the false and malicious Statements against Kronk, and to portray him as the murderer of her child.

16. Casey Anthony knew or was substantially certain that the Statements would cause injury to the Plaintiff and she in fact intended such injury.

17. Casey Anthony, through her attorneys, refused to retract the Statements, and when confronted with whether she was going to withdraw the defamatory Statements, Casey Anthony, through her attorneys, responded the Statements were not false, and that the Statements would stand.

18.     No liability is sought by Plaintiff for any statements made by Casey Anthony, through her agents, during actual court proceedings. The Statements at issue in this action were not made during actual court proceedings, but were instead made to the media, *et al.*, and were not made to achieve valid objects of litigation nor reasonably related to the judicial proceedings of the Criminal Trial.

19.     The recipients of the Statements were persons with no direct interest in the Criminal Trial.

20.     The Statements were not made in the act of preparing for the Criminal Trial.

21.     Defendant's above-described actions show that she acted intentionally and maliciously.

22.     These actions constitute the independent tort of defamation, the damages of which caused malicious injury to Plaintiff. Malicious injury has been defined for purposes of 11 U.S.C. § 523(a)(6) as "that conduct which is done without just cause or excuse, or for which there is no reasonable justification."

**COUNT I:**
**DETERMINATION OF DISCHARGEABILITY**
**UNDER 11 U.S.C. § 523(a)(6)**

23.     Paragraphs 1 through 28 of this Complaint are hereby incorporated as fully as if restated herein.

24.     Pursuant to 11 U.S.C. § 523(a)(6), a discharge pursuant to 11 U.S.C. § 727 does not discharge an individual from any debt for willful and malicious injury by the debtor to another entity or to the property of another entity.

25.     Casey Anthony directed her attorneys, who acted as her agents, to make and publish the false and defamatory Statements about Kronk.

26. Casey Anthony, through her attorneys, who acted as her agents, made and published the false and defamatory Statements about Kronk. Defendant sought, encouraged, and benefited from these actions, omissions, and representations and aided and abetted her attorneys in their actions, omissions, and representations.

27. Casey Anthony knew the Statements made by her agents, at her direction and authorization, were false and defamatory as to Kronk, she knew the Statements were harmful to Kronk or were substantially certain to cause harm to Kronk, and she knowingly did not take any action to correct the Statements once made.

28. The actions taken by Defendant constituted unprivileged publications to third parties of the above described false and defamatory Statements about Plaintiff.

29. The actions of Defendant were done with express malice knowing such actions would injure Plaintiff's reputation. The above statements were made with the intent to expose Plaintiff to hatred, ridicule, or contempt and charged Plaintiff with committing a crime and intended to injure Plaintiff in his business, reputation, or occupation.

30. The actions of Defendant were the direct and proximate cause of the damages suffered by Plaintiff as Plaintiff has suffered loss of reputation, embarrassment, humiliation, outrage, and has otherwise been directly damaged by Defendant's unprivileged actions.

31. In excess of the specific damages suffered by Plaintiff, Plaintiff is entitled to special damages due to the special harm caused by the unprivileged publications.

32. Although Defendant, through her agents, knew or should have known that the statements were defamatory, Defendant, through her agents, proceeded to publish the false and defamatory statements with malice and without regard to Plaintiff..

33. Defendant's actions were willful and caused malicious injury to the Plaintiff.

34. The resulting debt is not dischargeable pursuant to 11 U.S.C. §523(a)(6).

**JURY TRIAL DEMAND AND RESERVATION OF RIGHTS**

35. Plaintiff hereby demands a trial by jury and reserves all its rights to a trial by jury for all issues so triable, including without limitation liquidation of the debt.

WHEREFORE, Plaintiff, Roy Kronk, respectfully requests that this Court enter a judgment pursuant to 11 U.S.C. § 523(a)(6) denying the Defendant a discharge as to her liability to the Plaintiff arising from her defamatory Statements in an amount to be determined in an action before the state court, plus reasonable attorney's fees and costs, and granting such other relief as the Court deems just and proper.

Dated this 26th day of November, 2013.

          Respectfully submitted,

          */s/ Howard S. Marks*
          **Howard S. Marks, Esquire**
          Florida Bar No. 0750085
          **Michael A. Nardella, Esquire**
          Florida Bar No. 51265
          **Burr & Forman, LLP**
          200 South Orange Avenue, Suite 800
          Orlando, Florida  32801
          Phone:  (407) 540-6600
          Fax: (407) 540-6601
          E-mail: hmarks@burr.com
                    mnardella@burr.com
          **ATTORNEYS FOR ROY KRONK**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 26, 2013, I filed the foregoing Amended Complaint with the Court's CM/ECF electronic case filing system which will send a true and correct copy of same to the following:  Debra Ferwerda, Esq., Counsel for Defendant, at dferlaw@cs.com; and David Schrader, Esq., Counsel for Defendant, at dschraderlaw@gmail.com, dschraderlaw.assistant@gmail.com.

          */s/ Howard S. Marks*
          **Howard S. Marks, Esquire**