UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

CASEY MARIE ANTHONY,                                           Case No. 8:13-bk-00922-KRM

**FILED**                          Chapter 7

Debtor.

APR 2 5 2016

Roy Kronk,                          CLERK U.S. BANKRUPTCY,
        Plaintiff,                  ORLANDO DIVISION    Adversary Proceeding
                                                        Case No. 8:13-ap-00629-KRM

v.

CASEY MARIE ANTHONY,
Defendant.

### DOMINIC CASEY'S RESPONSE TO DEFENDANT'S MOTION FOR
### EXTENSION OF TIME TO CONDUCT DEPOSITION OF DOMINIC CASEY

Debtor/Defendant CASEY MARIE ANTHONY, by and through her attorney, David L. Schrader

files a Motion For Extension of Time To Conduct the Deposition of Dominic Casey and to File a

Motion For Summary Judgement, Responses Thereto, and To Reschedule Pretrial and as

grounds therefore stated as follows:

1.  On February 9, 2016, this Court entered its Order Setting Briefing Schedule and
    Continuing Hearing on Defendant's Motion For Judgement on the Pleadings, Responses
    to the Defendant's Motion For Judgement on the Pleadings and Plaintiff's Motion to
    Determine Whether Proceeding is Core ("Order") [Document No. 73].

2.  Pursuant to said Order, the parties shall conduct the deposition of Dominic Casey by
    APRIL 1, 2016, and file any Motions for Summary Judgement by April 15, 2016, should
    they be so inclined.

3.  Pursuant to said Order, Defendant scheduled the deposition of Dominic Casey for
    March 31, 2016 at the Law Office of Cheney Mason, 250 South Park Avenue, #200,
    Winter Park, FL 32789.

4. For purposes of Dominic Casey's deposition, Defendant's counsel coordinated the date of the deposition with the Plaintiff's counsel, who coordinated the date of the deposition with the deponent. However, Mr. Casey "refused" to appear at Mr. Mason's office for deposition, as he is a resident of Seminole County.

5. As a result, Mr. Casey did not attend the deposition scheduled for March 31, 2016 at the scheduled location. No subpoena had been issued compelling his attendance.

Dominic Casey's Response to Debtor/Defendant CASEY MARIE ANTHONY, David L. Schrader's Motion:

a. The Court entered its Order on February 9, 2016. Pursuant to said Order, the parties would conduct the deposition of Dominic Casey of Dominic Casey by April 1, 2016, should they be so inclined.

b. Following the entry of the Courts Order, Defendant's counsel coordinated dates for a deposition with the Plaintiff's counsel, who coordinated dates of a deposition with Dominic Casey. At which time, Dominic Casey, made it abundantly clear that he would not agree to be deposed in the presence of Cheney Mason, or in the offices of Cheney Mason. Plaintiff's counsel was coordinating the location of the deposition in Seminole County and it would not take place in the office of Cheney Mason.

Furthermore, Cheney Mason was Dominic Casey's attorney in 2009 relative to the Zenaida Gonzalez Defamation case against the Defendant.

Cheney Mason represents the Defendant which is clearly a conflict of interest. Cheney Mason represents the Defendant and represented Dominic Casey on:

Wednesday March 25, 2009:

Cheney Mason provided notice of representation to Zenaida Gonzalez attorney, John Morgan of Morgan & Morgan.

Friday March 27, 2009:

At a Meeting with Cheney Mason in his office, he advised me/Dominic Casey that Privilege and Work Product applies and, I can provide name and I.D. Nothing else.

During the meeting, Cheney Mason informed me/Dominic Casey at the time not to disclose anything about the Defendant murdering Caylee Marie Anthony and, for what purpose the Defendant had used duct tape.

Cheney Mason also informed me/Dominic Casey at the time not to disclose anything about how and when the Defendant disposed of Caylee Marie Anthony's decomposed body on Suburban Drive.

Wednesday April 8, 2009:

Cheney Mason contacted John Morgan, said they could not depose me.

Wednesday April 29, 2009:

Met with Diana Tennis. She began representing me in the Zenaida Gonzalez case and the ludicrous allegations of Jose Baez setting me up for the disposal of Caylee Marie Anthony's body.

Monday June 1, 2009:

Cheney Mason informed attorney Diana Tennis that he was going after John Morgan for his attorney fees.

c. Furthermore, Defendant's counsel, David L. Schrader, in this matter stated in Defendant's Motion For Extension of Time To Conduct the Deposition of Dominic Casey that Mr. Casey "refused" to appear at Mr. Mason's office for deposition, as he is a resident of Seminole County.

d. I/Dominic Casey received a call from Plaintiff's counsel on March 31, 2016 about a deposition and it would be at Cheney Mason's office within two (2) hours.

e. Plaintiff's counsel had previously advised Defendant's counsel that the deposition could not be at Cheney Mason's office.

f. To my knowledge, at the time of the call, the deposition was cancelled due to Defendant's counsel failure to coordinate the date and proper location of the deposition.

g. Defendant's counsel, David L. Schrader, knew of the conflict of interest at the time of attempting to schedule a deposition for Dominic Casey at Cheney Mason's office and in the presence of Cheney Mason.

h. Defendant's counsel, David L. Schrader ignored the conflict of interest, attempted and
failed to schedule a deposition then filed a Motion with the Court falsely stating:

> "However, Mr. Casey "refused" to appear at Mr. Mason's office for deposition,
> as he is a resident of Seminole County."

i. Defendant's counsel, David L. Schrader copied Cheney Mason, Esq. cheneylaw@aol.com
with counsels Motion For Extension of Time To Conduct the Deposition of Dominic
Casey and to File a Motion For Summary Judgement, Responses Thereto, and To
Reschedule Pretrial.

j. Cheney Mason was present during Dominic Casey's testimony at the State Attorney's
office on March 28, 2011 when he and Jose Baez waived privilege:

> 23 MR. BAEZ: Back on the record. The defense is
>
> 24 going to make the strategic decision to waive any
>
> 25 and all privilege as it pertains to Mr. Dominic
>
> 1 Casey.
>
> 2 MS. FERWERDA: That means you can speak
>
> 3 freely --
>
> 4 MR. BAEZ: Speak freely.
>
> 5 MS. FERWERDA: -- about everything that
>
> 6 happened during representation.

k. Attorney Debra Ferwerda represented Dominic Casey at the time and knew of the
presence of Cheney Mason and Jose Baez, specifically waiving privilege. Ms. Ferwerda
has since represented the Defendant, Casey Marie Anthony in connection with "Life
Rights" relative to the Defendant's bankruptcy filing with this Court.

l. With knowledge of privilege being waived, Cheney Mason and Defendant's counsel,
David L. Schrader previously represented to this Court that privilege was not waived.

Dominic Casey has provided two (2) Affidavits in this matter and relative to the issues:

December 28, 2015 Affidavit of Dominic Casey (Attached)

January 25, 2016 Affidavit of Dominic Casey (Attached)

WHEREFORE, I/Dominic Casey have at all times been fully cooperative in this matter and have not "refused" any proceeding.

/s/ **Dominic Casey**
Post Office Box 917394
Longwood, FL 32791

### CERTIFICATE OF SERVICE

I HEREBY certify that the foregoing document and two (2) attachments (Affidavits) have been emailed to Howard Marks, Esq. Burr & Foreman, LLP, hmarks@burr.com this 17th day of April 2016, for filing with the Court and distribution to the associated parties.

/s/ **Dominic Casey**
Post Office Box 917394
Longwood, FL 32791

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

CASEY MARIE ANTHONY,                       Case No. 8:13-bk-00922-KRM
                                           Chapter 7
    Debtor.
_____/

ROY KRONK,

    Plaintiff,                              Adversary Proceeding

v.                                         Case No. 8:13-ap-00629-KRM

CASEY MARIE ANTHONY,

    Defendant.
_____/

<u>**AFFIDAVIT OF DOMINIC CASEY**</u>

STATE OF FLORIDA
COUNTY OF SEMINOLE

    1.    My name is Dominic Casey. I am over the age of eighteen (18) years. I am competent to testify to the matters contained herein. I make this affidavit on my own personal knowledge.

    2.    In August, 2008, I was a detective hired to work with the Defense team for the murder trial wherein Casey Anthony was accused of killing her daughter, Caylee Marie Anthony.

    3.    During the publicity involved in the missing child case, Casey Anthony became aware of the telephone calls made to police by Roy Kronk in August of 2008 indicating he may

26297886 v1

have located the remains of Caylee Anthony. She (Casey Anthony) told me at that time, "Caylee is not coming home, they need to get used to that."

4.    She (Casey Anthony) asked me in September 2008 if, "the guy found anything?"

5.    In October 2008, just prior to the remains being found, Casey Anthony told me that when Caylee came up missing, the back gate was left ajar. Since Roy Kronk was a meter reader for the house, maybe "we could say Roy Kronk kidnapped Caylee."

6.    I told her then I would not do that because we both know he had nothing to do with Caylee's disappearance, but she was insistent that he (Roy Kronk) be implicated or blamed in some way.

7.    On December 11, 2008, it was confirmed that Roy Kronk had discovered Caylee's remains.

8.    During a meeting at the hotel that evening, Jose Baez came to meet with George and Cindy Anthony. She asked him what was found. Attorney Baez said, "let's go to the room to talk, Roy Kronk is very, very suspicious."

9.    I have never met with, spoken with, corresponded with or in any manner communicated with Roy Kronk at any time up to and including the date of the signing of this Affidavit.

10.    Based on my personal knowledge of the events and statements I personally heard from Casey Anthony she authorized and permitted her attorneys including, Jose Baez, to make

26297886 v1                                    2 of 3

false statements about Roy Kronk to portray him as a murderer and or kidnapper of Caylee Anthony.

FURTHER AFFIANT SAYETH NOT.

DOMINIC CASEY

SWORN and SUBSCRIBED to before me this 28th day of December, 2015 by Dominic Casey ☐ who is personally known to me or ☑ who has produced FL DL#C2XX-XXX-XX- as identification.
XXX-0

Notary Public
Print Name:
My Commission Expires:

Notary Public State of Florida
Marvin Ray Rannells
My Commission FF 930769
Expires 12/12/2019

26297886 v1

3 of 5

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

CASEY MARIE ANTHONY,                                    Case No. 8:13-bk-00922-KRM
                                                        Chapter 7

       Debtor.
_____

Roy Kronk,

       Plaintiff,                                       Adversary Proceeding
                                                        Case No. 8:13-ap-00629-KRM

v.

CASEY MARIE ANTHONY,
Defendant.
_____

### AFFIDAVIT OF DOMINIC CASEY

STATE OF FLORIDA
COUNTY OF SEMINOLE

1. My name is Dominic Casey. I am over the age of eighteen (18) years. I am competent to testify to the matters contained herein. I make this affidavit on my own personal knowledge.

2. In July, 2008, I was a detective hired by the Baez Law Firm to work with the Defense team for Casey Anthony who was accused of killing her daughter, Caylee Marie Anthony.

3. Within two weeks of Casey Anthony's July 16, 2008 arrest Jose Baez retained my agency, D&A Investigations, Inc.

4. Saturday July 26, 2008, Baez had told me that Casey had murdered Caylee and dumped the body somewhere and, he needed all the help he could get to find the body before anyone else did.

5. Shortly after being retained for the defense, I met Casey Anthony at the jail. There was no doubt that she had psychological issues. What they were, had yet to be professionally diagnosed. Jose Baez refused to have her evaluated by a psychological professional.

6. Casey had entered into a Retainer Agreement with the Baez Law Firm although Casey had been declared indigent and the State of Florida would pay for her defense, this Retainer Agreement required her to pay legal fees to the Baez Law Firm.

   She had no money and willingly entered into a second Agreement with "Jose Baez individually."

7. In exchange for legal fees and under the terms of the second Agreement, she signed over both her and Caylee's intellectual property rights "life rights." These life rights were exclusively licensed to Jose Baez individually.

   This second Agreement also required Casey to provide Baez with an extensive library of photographs, videos and other items that he could sell.

8. August 4, 2008, I met with Baez at his office to inform him of statements Casey had made during jail video visitations with her father, mother and brother: George, Cindy and Lee. She had made statements suggesting Caylee's location:

   > "Look in familiar places . . . check places we are familiar with . . . in my gut she's still ok . . . and it still feels like she's close to home . . . I know in my heart she's not far I can feel it . . ."

   On hearing Casey's statements, I pulled up an aerial view of the Anthony's neighborhood looking for an area she could have used to dispose of Caylee's body.

9. At the meeting Baez suggested to me that if I could gain access to the swamp on Suburban Drive without being seen, to do so. It could be the place Casey had dumped Caylee's body.

10. Access could not be gained at the time because of active searches being conducted by law enforcement, searchers and the media presence in the area.

11. August 8, 2008 I presented evidence to Baez suggesting there could have been an accident and Caylee drowned in the backyard pool. The accident snowballed out of control, Casey panicked and dumped Caylee's body.

    Casey did not call for help because she was afraid to say anything. She then went on the run. She may allege that her father and brother had been molesting her since she was 8-years-old and because of this, Casey was used to hiding her pain. 31 days later, Casey's

mother Cindy located her. Casey had been hiding out at a new boyfriend's apartment. Her family and longtime friends did not know the new boyfriend and did not know where he lived.

12. August 11, 2008, a meter reader (Roy Kronk) walked into the utility easement from Suburban Drive. He saw a "little round object" in the swamp, which he believed to be a child's skull. At 4:28pm. he called 911 to report what he believed to have seen.

13. One of Casey's high school friends Kiomarie Cruz lived on the same street as Casey. She had also called the Sheriff's Department and informed them that Casey, Jessica and she (Kiomarie) had used Suburban Drive as a "teenage hangout." Because this was a familiar place, Kiomarie said that Casey may have buried Caylee there.

That night, news reported that Kiomarie and a Deputy Sheriff drove around the neighborhood and along Suburban Drive.

14. August 12, 2008, the State Attorney offered limited immunity for Casey in exchange for information regarding Caylee. Casey wanted to accept the plea deal. Baez told her to wait until he returned from New York and he would be able to bond her out of jail.

15. August 14, 2008 while Baez was in New York, Casey wrote a letter to the Sheriff asking if he could set up a meeting with her father, George Anthony. She wanted George to help her work out a plea deal while Baez was in New York and say there was an accidental drowning. One of Baez's associates arrived at the jail when detectives had arrived to talk to Casey. The associate prevented any contact with Casey.

16. August 20, 2008 Tony Padilla posted Casey's $500,000.00 bail bond. She was fitted with an electronic monitoring device (ankle bracelet) and released the next day. Per the terms of the second Agreement with Jose Baez, Casey then took the extensive library of photographs, videos and other items to Baez for him to sell.

17. I provided investigative services and daily personal protection for her through October 14, 2008 and drove her to the Home Confinement Office.

18. August 29, 2008, Casey was re-arrested at the residence. She was later charged with uttering a forged instrument, fraud, use of personal identity and petit theft in connection with checks she had stolen from Amy Huizenga. Tony Padilla revoked her bail bond.

19. September 3, 2008, a meeting was arranged by Never Lose Hope Foundation for George, Cindy and Lee to meet with an attorney for the purpose of the attorney becoming their spokesperson.

    Unknown to them at the time, and on the way to meet the attorney, they were taken to meet Pete (Pedro) Beneviedes a convicted drug trafficker and money launderer for "El Chapo" the Mexican Drug Lord and head of the Sinaloa Cartel.

20. In addition to the $200,000.00 reward money, Beneviedes was now going to put up money for Casey's defense and, the $500,000.00 necessary for Casey's second bail bond.

21. September 5, 2008, I drove Baez, his associate and a bail bondsman to pick up Casey from the jail. Baez had scheduled a television interview for her that night. She did not want to interview and asked Baez to call and cancel.

    He called the network saying they would have to take a raincheck, hung up the phone and said to Casey:

    "You now owe me 3 blow jobs."

22. September 12, 2008 Casey asked if Baez knew about a meeting I had with Lee at my office. I told her no, Baez has been unavailable. She had concerns about "the guy" on Suburban Drive and whether he had found anything.

    Casey did not want me to discuss anything with Baez because she was getting a new attorney and going to plea deal. She asked me to continue representing her and asked me to bring a contract.

    September 13, 2008, Casey signed a letter of engagement with my agency (D&A). Lee Anthony was present and witnessed her signature.

23. September 15, 2008, Laura Buchanan who was one of Baez's bloggers, emailed George and Cindy's new attorney Mark NeJame claiming she had heard:

    "disturbing things like George was molesting Casey when she was younger and starting to molest Caylee . . .? That Caylee could possibly belong to George and or . . . Lee??? . . ."

24. Within two weeks, the misconduct between Casey and Jose Baez had escalated. I arrived at Baez's office unexpectedly one day and once again, witnessed a naked Casey. This time she ran from his private office, through the conference room to the hallway.

   That night, I told her that she cannot allow him to continue engaging in this behavior. Casey told me she had to do what Jose said because she had no money for her defense.

   I reminded her that Baez had more than enough money from the network he sold the photographs to pay for her defense. Casey apologized and assured me it would not happen again.

25. September 25, 2008, I provided written notice to Jose Baez that D&A Investigations, Inc. would terminate providing services to The Baez Law Firm on October 1, 2008.

26. October 1, 2008, pursuant to my notice on September 25, 2008, I provided written notice of termination to Jose Baez and the Baez Law Firm, effectively immediately.

27. I continued providing investigative services and personal protection for Casey Anthony through and until October 14, 2008.

28. I continued providing investigative services and personal protection to George and Cindy Anthony through and until June 6, 2009.

29. My investigation into members of the defense team and Casey Anthony continued through Casey's trial in 2011 and remains ongoing at the time and date of this Affidavit.

30. Prior to the Grand Jury indictment on October 14, 2008, Casey thanked me for providing "what Jose needed." She explained about not being aware of the details other than, George would be implicated. After all, he was the only one in the family who would be testifying against her at the Grand Jury hearing.

31. Casey talked about June 15, 2008 (Father's Day) when Cindy Anthony had taken Caylee to Mount Dora. When they returned, Cindy and Caylee went swimming in the backyard above ground pool. Casey had arrived home while they were swimming.

   Cindy asked Casey to get Caylee's bath ready. Casey got a towel and took Caylee inside the house for her bath. Cindy had removed Caylee's life jacket, bathing suit, removed the ladder from the pool platform and moved it away from the pool.

   Cindy then went into the bathroom. Casey and Caylee were having a bath together.

32. Casey suggested that we could say Cindy left the ladder up against the pool.

33. On June 16, 2008, Casey had also left the back gate ajar. Since Roy Kronk was a meter reader for the house, maybe "we could say he kidnapped Caylee."

34. I told her vehemently then, I would not do that because we both knew that Cindy and Roy Kronk had nothing to do with Caylee's disappearance. She was insistent that George, Cindy, Lee Anthony and the meter reader be implicated and blamed for the murder of Caylee.

35. October 14, 2008 Casey was indicted on first degree murder charges and placed on a no bond status at the Orange County jail in Orlando.

36. December 11, 2008, Caylee's remains were discovered inside the swamp on Suburban Drive. The following week, Baez began talking to the media about a surreptitious video taken of me at Suburban Drive in November 2008. Baez actively pursued a public and media campaign to implicate me in the disposal of Caylee's body. He told the media:

> "I wasn't buying Dominic's stories about being sent there by a psychic, or the fact that he was investigating whether that was a teenage hangout of Casey's . . . It was beyond suspicious."

37. What was beyond suspicious, Baez had already told me on Saturday July 26, 2008 that Casey had murdered Caylee and dumped the body somewhere. He had also suggested to me that if I could gain access to the swamp on Suburban Drive without being seen, to do so because it could be the place Casey had dumped Caylee's body.

38. Monday March 28, 2011 at 2:14pm. The State Attorney deposed me at their office in Orlando, Florida. During my deposition, Jose Baez stated that:

> "The defense is going to make the strategic decision to waive any and all privilege as it pertains to Mr. Dominic Casey . . . speak freely."

39. At Casey Anthony's trial, one of her defense attorneys asked my attorney if we could meet to discuss the questions she would ask me on the stand.

We met in a room at the courthouse which had been provided to the defense for the trial. Casey's attorney had a list of "video markers" relevant to the secretly recorded

video taken by James Hoover (George and Cindy's volunteer security person and Leonard Padilla associate) of me on Suburban Drive in November 2008.

The questions were designed to promote responses that would implicate me in the dumping of Caylee's body in the swamp and connect me to Roy Kronk.

40. I made it clear to the defense attorney that the video was secretly recorded. It had been tampered with, cut and pasted, and she needed to talk to Baez about it. The attorney had absolutely no idea of Casey's and Baez's planned fraud. When I was called to the stand for my testimony, the secretly recorded video was never produced.

41. Based on my personal knowledge of the events and statements I personally heard from Casey Anthony authorize and permit her attorneys including, Jose Baez, to make false statements about George, Cindy, Lee Anthony, Roy Kronk and portray them as being responsible for the murder of Caylee Marie Anthony.

42. Casey Anthony and Jose Baez knowingly and purposefully made false statements about me and portrayed me as being involved in a conspiracy with George and Cindy Anthony and Roy Kronk to conceal Caylee Marie Anthony's body.

Somewhere in this ludicrous scenario it was suggested that George gave Caylee's body to me for disposal. Cindy sent me to Suburban Drive in September 2008. Roy concealed the body until Thursday December 11, 2008. Then, and in anticipation of collecting a reward, he dumped Caylee's remains into the swamp and radioed his boss.

FURTHER AFFIANT SAYETH NOT.

SWORN and SUBSCRIBED to before me this 25th day of January, 2016 by Dominic Casey □ who is personally known to me or ⊠ who has produced a Florida Driver's License as identification.

Michelle Conlon
Notary Public
Print name: Michelle Conlon
My Commission expires: Oct 7, 2018

MICHELLE CONLON
Notary Public - State of Florida
My Comm. Expires Oct 7, 2018
Commission # FF 147781